IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **LORETTA LOVEJOY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action Number |
| ) | **2:12-cv-01866-AKK** |
| **NORTHWAY HEALTH &** ) | |
| **REHABILITATION LLC,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Loretta Lovejoy seeks damages from her former employer, Northway Health & Rehabilitation, LLC ("Northway"), for alleged discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Age Discrimination in Employment Act of 1967, 42 U.S.C. § 6101 *et seq.* ("ADEA").[1]  Docs. 1 and 4.  Defendant seeks summary judgment on

---

[1] Although the court noted in its September 6, 2012 opinion, doc. 12, that Lovejoy's *pro se* complaint appeared to allege a race discrimination claim under Title VII, the court also pointed to Lovejoy's attached EEOC complaint, which clearly states "I believe I was discriminated against, because of my age (60) in violation of the Age Discrimination in Employment Act, and my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended."  Doc. 1 at 9.  Since the court must construe *pro se* complaints liberally, *see Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998), the court will also address Lovejoy's claims under the ADEA – which has an analytical framework identical to that of Title VII, *see e.g. Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995).
However, the retaliation claim Lovejoy asserts in her response to Northway's motion

1

all claims, doc. 13, and the motion is fully briefed and ripe for review, docs. 14, 19, 20.  Although Lovejoy alleges mistreatment at the hand of her supervisor, these allegations are insufficient to establish discrimination *on the basis of* race or age. Accordingly, the court **GRANTS** Defendant's motion.

## I. SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56(c)(2) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323.  The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that

---

fails. *See* doc. 19 at 1.  Lovejoy failed to exhaust her administrative remedies with respect to this claim by alleging retaliation in her EEOC charge.  *See* doc. 1 at 9.  Moreover, the court specified that Lovejoy would be able to add additional claims to her complaint only until September 30, 2012.  Doc. 12 at 2 n.1.  Since Lovejoy failed to assert this retaliation claim prior to that deadline, she cannot now assert such claim.

there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiffs' favor when sufficient competent evidence supports Plaintiffs' version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th

Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## II. FACTUAL BACKGROUND

### A. Lovejoy's Initial Employment at Northway

Lovejoy began working at Northway as evening shift house supervisor in February 2010. Doc. 15-1 at 20-21. Some time later, Director of Nursing, Seena Self, asked Lovejoy to apply for an available day shift unit manager position. *Id*. at 27. Although another employee, Danielle Weekly, also applied for the position, Northway awarded Lovejoy the promotion. *Id*. at 21, 27. Northway later promoted Weekly when the other unit manager position became available. *Id*. at 25. Perhaps unhappy with being passed over for the first promotion, Weekly purportedly began "telling everybody she was the senior unit manager." *Id*. Interestingly, no such position technically exists at Northway. *Id*. Nonetheless, Lovejoy believes the informal title refers to the unit manager with seniority and more experience. *Id*. Accordingly, Lovejoy asserts that she should have held the title and complained to Self, who in turn reassured Lovejoy that she was, in fact, the "senior unit manager." *Id*.

### B. Self's Purported Mistreatment of Lovejoy

As unit manager, Lovejoy had several disputes with Self regarding patient care during which Self "would yell and scream about or just disagree with

something that [Lovejoy] would say would be good for [a] patient." *Id*. at 32. Lovejoy also takes issue with Self's decision to assign another person to help Lovejoy input reports into the computer on one occasion since the decision implied that Self purportedly felt Lovejoy was a slow worker. *Id*. at 35. Additionally, when Lovejoy came to work in a wheelchair after spraining her ankle, Self told Lovejoy that she "can't just come in here in a wheelchair like that" and that she needed prior permission. *Id*. at 32. Despite Self's statement, Lovejoy was allowed to use the wheelchair for six weeks. *Id*.

Lovejoy alleges also that Self treated her less favorably than Weekly, a younger Caucasian female.[2]  For example, although Lovejoy never received any disciplinary action while at Northway, she alleges that Self allowed Weekly to sit in on Lovejoy's write-ups as a witness. *Id*. at 45.[3]  Self also purportedly allowed Weekly to act like she was in charge during office meetings in Self's absence by taking notes in the "green binder." *Id*. at 44.  Admittedly, Self did not give Weekly permission to use the green binder and it appears instead that Weekly took the binder from the administrator's office on her own. *Id*.

Finally, Lovejoy alleges that she was mistreated because she never received

---

[2] Lovejoy failed to indicate Weekly's age.

[3] Lovejoy contends that although Northway policy required a witness to be present, Self should not have chosen Weekly as the witness. Doc. 15-1 at 45.

a certificate of appreciation while at Northway, although she is unsure how often or why these certificates are awarded. *Id*. at 45.

## C. Lovejoy's Resignation

Lovejoy complained twice to Sabrina Bowling in the human resources department that Self "was letting the younger white girl [(Weekly)] do what [she] used to do." *Id*. at 45. Although Bowling informed Lovejoy she would look into the situation, apparently Bowling never did. *Id*. When the situation failed to sufficiently improve, Lovejoy resigned by sliding a notice letter under administrator Freddy Skelton's door. *Id*. at 29, 46. However, Lovejoy asserts that the letter "was a cry out for help" and that she merely "was trying to tell [her] story." *Id*. at 29. Consequently, when Skelton returned to work the next day and told Lovejoy he accepted her resignation and that she did not need to work out her notice, Lovejoy relayed that she did not want to leave but "wanted to talk about why." *Id*. Since Skelton was not available to discuss the issue then, he offered to talk to his boss, Jerry Lewis, about possibly transferring Lovejoy to a different facility in the district. *Id*. at 30. According to Lovejoy, a thirty day window existed after her resignation during which human resources could have transferred her to another facility and performed an investigation into her allegations. *Id*. at 35. However, at a subsequent meeting with Lovejoy and Bowling, Skelton refused

to allow Lovejoy to revoke her resignation and informed her instead that she "should have thought about that before [she] wrote [the resignation letter]." *Id*. at 30. Northway later promoted house supervisor Vaneese Cannon to Lovejoy's position as unit manager.[4] *Id*. at 35.

**D.    Lovejoy's EEOC Complaint**

On August 15, 2011, Lovejoy filed a formal charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that she "was subjected to harassment" by Self who "yelled at [Lovejoy], and made comments about [her] on a weekly basis." Doc. 1 at 9. The charge further alleges that Self "began alleging to the Corporate Nurse, Beth, that [Lovejoy] was slow" and "constantly made reference to younger workers saying young people can do things older people can't do." *Id*. Lovejoy stated that "[t]he incident that ultimately led to [her] resignation" was Self commenting that "nurses are stupid" because Lovejoy felt the comment was in reference to her personally. *Id*. Finally, Lovejoy alleges that "[s]imilarly situated younger White employees were not subjected to the same treatment" and that she "was subjected to a hostile work environment which constituted a constructive discharge." *Id*.

---

[4] Lovejoy also asserts that Cannon was younger than her and that Cannon told Lovejoy on more than one occasion that she was hired as house supervisor but knew that she was going to be promoted to unit manager within three months. Doc. 15-1 at 35.

### III. ANALYSIS

Lovejoy asserts claims under Title VII and the ADEA for harassment and discriminatory discharge. *See* docs. 1 and 4. Northway contends that Lovejoy cannot establish a *prima facie* case under either Act. The court discusses this contention with respect to each claim below.

**A.  Title VII Claims**

   1.  Harassment/Hostile Work Environment

"To establish a hostile work environment claim pursuant to Title VII, a plaintiff has the burden of proving 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Freeman v. City of Riverdale*, 330 Fed. Appx.863, 865 (11th Cir. 2009) (*quoting Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). A plaintiff may satisfy this burden by demonstrating that "(1) [s]he belongs to a protected group; (2) [s]he has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic, such as race; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a[] discriminatory abusive working environment; and (5) the employer is responsible for such environment under a

theory of vicarious or direct liability." *Id*.

Lovejoy's hostile work environment claim fails because she did not demonstrate that the harassment she purportedly suffered "was based on a protected characteristic" covered by Title VII. The alleged harassment consisted of Self treating Lovejoy poorly by yelling at her in meetings, making inappropriate comments such as "nurses are stupid," and disagreeing with Lovejoy's patient treatment decisions. Doc. 15-1 at 32, 35; Doc. 1 at 9. However, there is no indication that racial animus motivated Self's actions. In fact, Lovejoy testified that Self disliked her because Self thought Lovejoy was trying to take her job. Doc. 15-1 at 28. Unfortunately for Lovejoy, such a basis for harassment is not protected under Title VII's anti-discrimination provision. The failure to established race-based harassment dooms Lovejoy's *prima facie* case. Accordingly, Northway's motion is **GRANTED**.

    2.    <u>Discriminatory Discharge</u>

Title VII "makes it unlawful for an employer to 'discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race.'" *Brown v. Ala. Dep't Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010) (quoting 42 U.S.C. § 2000e-2(a)(1)). Where, as here, a plaintiff relies upon circumstantial evidence to establish

discriminatory intent by an employer, the court applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff must first create an inference of discrimination by establishing a *prima facie* case of discrimination. *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citation omitted). To establish a *prima facie* claim of discriminatory discharge, the plaintiff must show "that [s]he (1) was a member of a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) h[er] employer treated similarly situated employees outside h[er] classification more favorably." *Ashmore v. Secretary, Dept. of Transp.*, No.12-10515, 2013 WL 28433, at *3 (11th Cir. Jan. 3, 2013) (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). If the plaintiff satisfies this burden, "then the defendant must show a legitimate, non-discriminatory reason for its employment action. . . . If it does so, then the plaintiff must prove that the reason provided by the defendant is a pretext for unlawful discrimination." *Burke-Fowler*, 447 F.3d at 1323 (citation omitted). Despite this burden-shifting framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Springer v. Convergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007)(citation omitted).

Northway challenges the adverse employment action prong of Lovejoy's *prima facie* case. Doc. 14. Construing Lovejoy's allegations liberally since she proceeds *pro se*, *see Tannenbaum*, 148 F.3d at 1263, the court finds that Lovejoy identifies the following purported adverse employment actions: loss of status as senior unit manager and constructive discharge. *See generally* docs. 1 and 4. Unfortunately for Lovejoy, "senior unit manager" is not a formal position at Northway. More importantly, when Lovejoy complained, Self notified her that she was the senior unit manager. Doc.15-1 at 25. To the extent Weekly usurped Lovejoy's "status" by asserting that she had senior status over Lovejoy and by carrying a green binder to staff meetings, this conduct occurred outside the presence of Self and without her permission or assistance. *Id*. at 44. Therefore, Lovejoy cannot establish the adverse action prong of her loss of status claim.

As related to the constructive discharge contention, Northway did not constructively discharge Lovejoy for purposes of Title VII. A constructive discharge occurs "when an employee involuntarily resigns in order to escape intolerable and illegal employment requirements to which he or she is subjected *because of* race, color, religion, sex, or national origin[.]" *Henson v. City of Dundee*, 682 F.2d 897, 907 (11th Cir. 1982) (internal quotation marks and citation omitted) (emphasis added). As discussed previously, although Self may have

11

harassed Lovejoy, Lovejoy failed to demonstrate that Self did so "because of" her race rather than because of a perception that Lovejoy posed a threat to Self's job. While it is unfortunate that Lovejoy believed she suffered an intolerable work environment from Self, "Title VII is not a shield against harsh treatment at the workplace. . . . The employer may [act] . . . for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, so long as its action is not for a *discriminatory* reason." *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984) (emphasis added), citing *Jackson v. City of Kileen*, 654 F.2d 1181, 1186 (5th Cir. 1981); *Megill v. Board of Regents*, 541 F.2d 1073, 1077 (5th Cir. 1976). Lovejoy failed to establish a discriminatory reason for the mistreatment and, accordingly, Lovejoy's *prima facie* case fails and Northway's motion is **GRANTED**.

**B.     ADEA Claims**

    1.     Harassment/Hostile Work Environment

The standard for establishing a hostile work environment claim under the ADEA is identical to Title VII's standard. *See Apodaca v. Secretary of Dept. of Homeland Sec.*, 161 Fed. Appx. 897, 901. Namely, the plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment." *Freeman*, 330 Fed. Appx. at 865. In other words, Lovejoy must show that Self's purported harassment was "because of" a protected trait. *See id.* Unfortunately, Lovejoy failed to establish that Self's purported harassment was related to Lovejoy's age.

To support her age-based harassment contention, Lovejoy testified that Self purportedly implied that Lovejoy was "slow" by assigning someone to help her input data into a computer and that Self commented that younger people could do things older people could not. While the latter comment regarding younger people may create an inference of age-based animus, it is not sufficiently severe or pervasive to establish a *prima facie* case of harassment. The "severe or pervasive" standard requires that the alleged harassing behavior "result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive." *Hill v. Emory Univ.*, 346 Fed. Appx. 390, 396 (11th Cir. 2009). Since Lovejoy subjectively feels Self's behavior meets this standard, the court must evaluate the objective component by considering "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id*. Even assuming Self made the

13

comment regarding younger persons having greater abilities multiple times, the comment is, at best, "a mere offensive utterance" that would not unreasonably interfere with an employee's job performance. Based on these facts, Lovejoy failed to establish a *prima facie* case of harassment under the ADEA and Northway's motion is **GRANTED**.

2. Discriminatory Discharge

The ADEA follows the same burden-shifting framework as Title VII, which requires a plaintiff who relies upon circumstantial evidence to first establish a prima *facie case* of discrimination. *Walker*, 53 F.3d at 1556. "In an ADEA case involving discharge, demotion, or failure to hire, a plaintiff may establish a prima facie case by showing: (1) that he was a member of the protected group of persons between the ages of forty and seventy; (2) that he was subject to adverse employment action; (3) that a substantially younger person filled the position that he sought or from which he was discharged; and (4) that he was qualified to do the job for which he was rejected." *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). If the plaintiff establishes these elements, the burden then shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Walker*, 53 F.3d at 1556. When an employer meets this burden, the plaintiff must respond by showing that the employer's

articulated reason is merely pretext for discrimination. *Id*.

Again, Lovejoy did not suffer an adverse employment action. *See* section A(2), *supra*. She was not removed from her position as senior unit manager while at Northway, despite Weekly's proclamations to the contrary. Additionally, the evidence fails to indicate that Self mistreated Lovejoy *because of* her age, as necessary to establish constructive discharge. While the court may disagree with Self's purported conduct, the "ADEA does not guarantee a stress-free working environment." *Hipp v. Liberty National Life Ins. Co.*, 252 F.3d 1208, 1233 (11th Cir. 2001). Accordingly, Lovejoy failed to establish a *prima facie* case of age discrimination and Northway's motion is **GRANTED**.

## IV.  CONCLUSION

For the reasons discussed above, the court **GRANTS** Defendants' motion as to all claims. Accordingly, Lovejoy's claims are **DISMISSED with prejudice**.

**DONE** this 8th day of February, 2013.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE